## BARKER *v.* THE SWALLOW.

(*District Court, N. D. Illinois.* October 20, 1890.)

SHIPPING—LOSS OF CARGO—PERILS OF THE SEA—OVERLOADING.

The propeller S. started on a voyage with a cargo of lumber, part of which was piled on deck to the height of 8 or 10 feet, which was fully equal to the depth of the hold. A wind sprung up on her quarter, raising a sea that caused her to roll so heavily that she careened to port and hung there until the deck-load on that side slid off, when she righted and rolled to starboard until the lumber on that side went overboard, leaving only that piled amidships. She then righted and rode easier, and came safely to port. It was shown that the wind in question was only a 12 or 15 mile breeze, and not a gale. *Held,* that the loss was not due to stress of weather, but to overloading, and the vessel is liable therefor.

In Admiralty.
*Schuyler & Kremer,* for libelant.
*W. H. Condon,* for respondents.

BLODGETT, J. The libelant in this case seeks to recover the value of part of a cargo of pine lumber shipped on board the propeller Swallow on or about the 31st day of July, 1888, at the port of Muskegon, to be transported to the port of Chicago, and which, it is averred, was not delivered to the libelant at the latter port of destination. The shipment of the lumber is admitted by the answer of respondents, but they allege as an excuse for the non-delivery that the portion of the cargo not delivered to the libelant at the port of destination was a part of the deck-load of the propeller, which was washed overboard and lost in midlake, by reason of the strong wind and heavy sea which prevailed, and that neither the vessel nor her owners are liable for such loss, the same having been lost by a peril of the sea, without fault of the crew of the Swallow or of her owners. It is admitted to be the usage of both sailing and steam vessels, engaged in the lumber trade on Lake Michigan, to carry part of their cargo on deck, and that the vessel and her owners are not liable for the loss of the cargo so carried, by a peril of the sea, if the same is properly stowed, and the vessel be seaworthy and properly loaded and navigated. It is admitted that the Swallow took on board for libelant at Muskegon for the port of Chicago a cargo of 283,393 feet of pine lumber, nearly one-half of which was stowed on deck, and that while on the passage she lost 86,227 feet from the deck-load, which was of the value of $1,822. But respondents insist that they are not liable for this loss, because, as they say, a high wind arose which caused the vessel to roll to such an extent that the lumber in question was lost overboard by the rolling of the steamer, occasioned by the heavy wind and waves, and not by any fault of the steamer or those in charge of her. The proof on the part of the respondents shows that the Swallow sailed from Muskegon in the evening, her course being about south-west; that soon after 12 o'clock a strong wind arose from the north, which raised a heavy sea, which struck the Swallow on her starboard quarter, causing her to roll

very badly; that finally she careened over to port and hung there for some time until a part of the deck-load on the port side slid off, when she righted and rolled to starboard, where she hung until a part of the deck-load on the starboard side slid off, leaving the part of the load in the middle of the deck in place, after which she righted, and did not roll so badly afterwards, and brought the remainder of the cargo safely into port. It is conceded that it is not the usage to lash deck-loads of lumber vessels with ropes or chains, but it is expected that the frictional contact of the surfaces of the boards forming the deck-load will be sufficient to keep them in place, in the ordinary seas encountered in crossing the lake; but the contention on the part of the libelant is that too much lumber was loaded upon the deck, thereby making the vessel top-heavy, and causing her to roll more than she would have done had she not been overloaded on deck. The testimony from respondent's witnesses fails to show that the loss of the deck-load was caused by what is called a "gale of wind" or a "tempest." The statement by respondent's witnessess is that, while the Swallow rolled very heavily, the wind did not exceed a 12 to 15 miles per hour breeze, while it is conceded that the velocity of the wind must be at least at the rate of 40 miles per hour to make what is called by seamen a "gale." The fact that she rolled so badly from such a wind must, I think, be taken as conclusive proof that she had too much load on her deck, thus bringing her center of gravity too high above her keel, and this view is confirmed by the fact that all the crew who have testified agree that she rode easily after she had spilt off the deck-load from the sides. The proof also shows that the lumber was piled on deck to the height of eight or nine feet, which was fully equal to, if not greater than, the depth of the hold. Now, while a vessel is not liable for the loss of her deck-load when it is lost by stress of weather, or what can be properly called a "peril of the sea," yet, if she takes on so heavy a deck-load as to become top-heavy, and endangers loss of the deck-load, or puts it in peril in an ordinary wind, or anything less than a gale of wind, or such a stress of weather as is clearly unusual, it should, I think, be accounted bad stowage and negligence. Overloading the vessel so as to render her unmanageable, or susceptible of becoming unmanageable, by such a wind as is shown to have prevailed on the night in question, is, I think, a manifest negligence on the part of the carrier, and such as should not acquit him of liability if the cargo is lost. Respondents submit proof showing that the Swallow had carried from port to port cargoes considerably larger than the one she had on board on the night in question, but the fact that this was done occasionally, or even frequently, only shows that the parties were fortunate in not meeting with wind enough to set their vessel rolling, while overloaded, and does not prove that it was either prudent or good seamanship to have so loaded their steamer. While the law acquits a common carrier from loss of cargo by what can be properly termed a "peril of the sea," it at the same time holds it responsible for the safety of the cargo in ordinary weather, and as against ordinary risks, and I cannot dis-

miss from my mind the conclusion that the deck-load of this steamer was lost on this occasion, not from stress of weather, but because as I have already said the vessel was overloaded, and had too much of her load on deck. A decree will therefore be entered finding the steamer at fault, and awarding damages to the libelant in the sum of $1,822.